UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBERTO RESTO,

                              Plaintiff,
                                                                         9:08-CV-0340
v.                                                                (LEK/GHL)

WEISSMANE, Doctor, Upstate C.F.;
N. SMITH, Nurse Administrator, Upstate C.F.;
CHESSBOARD, Registered Nurse, Upstate C.F.;
WALSH, Registered Nurse, Upstate C.F.,

                              Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

ALBERTO RESTO, 01-A-0183
  Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GEORGE H. LOWE, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Lawrence E. Kahn, Senior United States District Judge, to hear and determine all pretrial matters (of a non-dispositive nature) and issue report-recommendations on all dispositive matters before the Court, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

On August 25, 2008, this Court, noting deficiencies in Plaintiff's original complaint and *in forma pauperis* application, conditionally dismissed Plaintiff's complaint. (Dkt. No. 9.)

Currently before the Court is Plaintiff's second motion for leave to proceed *in forma pauperis* (Dkt. No. 14) and Plaintiff's amended complaint, which consists of two separate documents filed on different dates. (Dkt. Nos. 12-13.) For the reasons discussed below, I recommend that the Court issue an Order *sua sponte* dismissing Plaintiff's amended complaint.

I.   SUMMARY OF PLAINTIFF'S ORIGINAL COMPLAINT

Construed with the extra leniency normally afforded to pleadings drafted by *pro se* civil rights litigants, Plaintiff's original complaint alleged that four employees of Upstate Correctional Facility ("Upstate C.F.")–Dr. Weissmane, Nurse Administrator N. Smith, Nurse Chessboard, and Nurse Walsh (collectively "Defendants")–violated his rights under the Eighth and Fourteenth Amendments in two ways: (1) by being deliberately indifferent to his serious medical needs, and (2) by wrongfully disclosing private medical information about him to one or more non-medical-care professionals. (*See generally* Dkt. No. 1, ¶¶ 3, 7 & Exhibits [Plf.'s Compl.]; Dkt. No. 5 [Exs. to Plf.'s Compl.].)[1]

Unfortunately, the body of Plaintiff's handwritten form original complaint (even read with the utmost of special solicitude) failed to set forth factual allegations plausibly suggesting the events giving rise to these legal claims. For example, the section of Plaintiff's Complaint labeled "Facts," appeared to read as follows:

---

[1] For example, in the section labeled "Causes of Action" in his form Complaint, Plaintiff states as follows: "My causes of action against Upstate Correctional Facility types [sic] of prisoner rights medical care source [sic] constitutional rights Eight Amendment informational privacy Fourteenth Amendment chapter [illegible] . . . ." (Dkt. No. 1, ¶ 7 [Plf.'s Compl.].)

> Alberto Resto[,] Claimant[,] filed Claim Number 107447 on March 10, 2003[.] Claimant demands damages for an assault that claims [sic] was perpetrated on him by [a] correction officer while claimant was confined at Auburn Correctional Facility (Auburn)[.] He also alleges that shortly after the incident some of the property in his cell was destroyed by [the] correction officer[.] He seeks [$]30000 for his damaged property and [$]50,000 for [a] personal injury [he] allegedly suffered in the assault. As testimony indicated that Claimant failed to exhaust his administrative remedies as required by [the] Court of Claims Act 1C9 with reguard [sic] to the a . . . .

(Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) The recitation of facts abruptly ended mid-sentence. (*Id.*) Other parts of the Complaint revealed that the "Claim" to which Plaintiff referred was filed in the New York State Court of Claims, and was against "Auburn Correctional Facility," "Correction Officer Clarke," "Sgt. Martin," and "Correction Officer Darren Gamache." (*Id.* at ¶ 5[b][i].) This recitation of facts was so unrelated to Plaintiff's stated Causes of Action, and the exhibits accompanying his complaint, that I could only conclude that Plaintiff filled out this section of the form Complaint believing it to be a continuation of the section immediately proceeding it, which regarded Plaintiff's "Previous Lawsuits" (and which discussed the complaint he filed with the New York State Court of Claims in March of 2003).

For this reason, I looked to the three exhibits attached to Plaintiff's Complaint for factual allegations plausibly elaborating on his legal claims. These exhibits were three one-page written decisions issued by the New York State Department of Correctional Services ("DOCS") Central Office Review Committee on March 12, 2008, February 13, 2008, and January 30, 2008, affirming the Upstate C.F. Superintendent's denial of the following three grievances filed by Plaintiff: (1) Grievance Number UST-33728-07, filed December 26, 2007, labeled "Want to See Dr. Vitamin/Ensure"; (2) Grievance Number UST-33889-08, filed January 7, 2008, labeled

3

"Nurse Harassing"; and (3) Grievance Number UST-33298-07, filed November 20, 2007, labeled "Didn't Receive [illegible] Meds/Cream." (*See* Dkt. No. 1, Exhibits [Plf.'s Compl.].) These documents only obliquely hinted at what might have been Plaintiff's serious medical needs (giving rise to the Eighth Amendment medical care claim in his Complaint): a need for vitamins, the nutritional drink "Ensure," an unidentified medication, and an unidentified "cream." (*Id*.) In addition, these documents obliquely hinted at what might have been the event giving rise to Plaintiff's invasion-of-privacy claim: an incident when a medical staff member spoke so loudly during a sick call visit to Plaintiff that one or more nearby correctional officers (supervising the visit in order to maintain prison security) overheard Plaintiff's medical condition. (*Id*.) These documents did not elaborate further on the facts giving rise to Plaintiff's claims, such as (1) under what disease or infirmity Plaintiff was laboring during the time in question, (2) which individuals committed the wrongs at issue, or (3) when the wrongs occurred. (*Id*.)

Also accompanying Plaintiff's original complaint were 66 pages of documents (which Plaintiff submitted to the Court approximately a week after filing his Complaint, and which were accepted and docketed by the Court as "exhibits" in support of his Complaint, out of an extension of special solicitude to Plaintiff as a *pro se* civil rights litigant). (Dkt. No. 5.) These documents consisted of approximately 36 handwritten grievance complaints authored by Plaintiff on the following dates: October 30, 2007; November 15, 2007; December 2, 2007; December 4, 2007; December 10, 2007; December 15, 2007; December 18, 2007; January 1, 2008; January 5, 2008; January 13, 2008; February 14, 2008; February 27, 2008; March 11, 2008; March 15, 2008; March 21, 2008. (*Id*.) They also consisted of two memoranda from Defendant Smith to Plaintiff, dated December 18, 2007, and February 14, 2008. (*Id*.) Generally, the grievance

4

complaints alleged that, on various (often unidentified) dates, Defendants Walsh, Smith, Chessman, and/or unidentified medical staff members (1) in some way denied him medical care for what Plaintiff calls his "althiec [sic] feet," "dry skin," "soore [sic] throat," "stuffy nose," and/or (2) denied his requests for "foot powder," an "ointment bactiera [sic] cream for dry skin [and] for rash [on feet]," "Ensure nutritional supplement," a "multiply [sic] vitamin," "ear drop[s] [for ear] wax," and/or "optometrist eye glasses [sic]." (*Id*.)

However, the grievance complaints were barely, if at all, legible; they were arranged out of chronological order; they wandered freely from one event to the next; and they often omitted details such as the time and place of a wrongful act, as well as the identity of the actor. (*Id*.) In addition, the grievance complaints were not referenced in any specific way in the body of Plaintiff's complaint. (Dkt. No. 1.)

I concluded that:

(1) The body of Plaintiff's complaint was so devoid of factual detail, and the 36-odd grievance complaints accompanying the Complaint were so illegible and lacking in essential details, and wandered so freely from one circumstance to the next, that, as a whole, the complaint was confusing, ambiguous, vague and/or otherwise unintelligible under Fed. R. Civ. P. 8(a)(2) and 10(b);

(2) To the extent that Plaintiff was indeed trying to assert claims arising out of the events at issue in the complaint he filed with the New York State Court of Claims in March of 2003, those claims appeared to be barred by the three-year limitations period governing claims brought under 42 U.S.C. § 1983 in federal courts sitting in New York State;

(3) To the extent that Plaintiff's inadequate-medical-care claim arose out of a

disagreement with Defendants over how his medical conditions should be treated (which appeared to be the main thrust of what Plaintiff is alleging), such a disagreement is simply not actionable under 42 U.S.C. § 1983;[2]

(4) To the extent that Plaintiff's breach-of-privacy claim arose out of an incident when a medical staff member *negligently* spoke so loudly during a sick call visit to Plaintiff that one or more nearby correctional officers (supervising the visit in order to maintain prison security) overheard Plaintiff's medical condition, such negligence (whether it is the subject of a claim asserted under the Fourteenth Amendment or the Fourth Amendment) is not actionable under 42 U.S.C. § 1983;[3] and

---

[2]  *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements [between a prisoner and prison officials] over medications . . . are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence. . . . Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . . Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[3]  *See Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting Section 1983 claim based on alleged due process violation under Fourteenth Amendment); *Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient [to state a claim under the Fourth Amendment]."); *Riddick v. Modeny*, No. 07-1645, 2007 WL 2980186, at *2 (3d Cir. Oct. 9, 2007) ("The protections afforded

(5) To the extent that Plaintiff was trying to assert claims arising out of the events that were the subject of his handwritten grievance complaints dated March 11, 15, and 21 of 2008, Plaintiff's allegations about the efforts he took to exhaust his available administrative remedies regarding those grievances were so specific (*see*, *e.g.*, Dkt. No. 1, ¶ 4.b.ii. & Exhibits [Plf.'s Compl.])–and yet so conspicuously devoid of any explanation of how he could have possibly appealed to, and have heard from, DOCS' Central Office Review Committee regarding those grievances by March 24, 2008 (the date his Complaint in this action was postmarked)–that he effectively "pled himself out of court" with regard to those claims.[4]

## II.  SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT

The amended complaint (Dkt. Nos. 12-13) does not correct the problems of the original complaint. The allegations regarding the disclosure of medical information have disappeared entirely. The allegations regarding a five-year old assault remain, along with vague allegations regarding medical care.

---

prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials."); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002); ("The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability.").

[4] A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *See Jones v. Block*, 127 S. Ct. 910, 919-21 (2007). "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Block*, 127 S. Ct. at 919-21. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id*. at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed. R. Civ. P. 12(b)(6) dismissal premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may plead himself out of court.

In Docket No. 12, Plaintiff merely names the defendants and provides a statement of venue and jurisdiction. In Docket No. 13, Plaintiff sets out six "causes of action":

> First cause of action: government Patiki [illegible] prisoner I've been denied medical attention.
>
> Second cause of action: Lester Wright medical chief MD I have wrote 4/27/08 yellow diarea internal shot hep C chronic state 1 meds I was 2004 and provide doctor I have [illegible] sick produce still been denied medical attention medical staff at Upstate.
>
> Third cause of action: Doctor Wesstmane I wrote 6/17/08 chronic hep C stage I had [illegible] I was [illegible] they stop treatment due low white blood cell never had side affect due that I have hep C chornic Stage 1 when I seen liver specialize in medical records get nutritional supplement 2 ensure multiple tablet prescribe.
>
> Forth (sic) Cause of Action: Registered Nurse Chessboard I have put for sick call 3/10/08 medical attention did medical services was harassment.
>
> Fifth cause of action: Registered Nurse Walsh 5/27/08 5/6/08 6/10/08 6/11/08 sick call medical attention did medical services.
>
> Six[th] cause of action: Nurse Administrator Smith I have wrote grievance adviser [illegible] concerning sick call procedure medical attention medical services [illegible] denied attention with restraints [illegible] hands and legs although he offered resistance officer pulled me with restrain threw into wall.

These allegations are followed by handwritten, partially illegible apparent recitations of responses that Plaintiff received to grievances regarding his medical care. (Dkt. No. 13 at 7-10.)

Even construed with the special solicitude due civil rights litigants proceeding *pro se*, these allegations are confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b). Moreover, to the extent that Plaintiff claims he was assaulted by five unnamed correctional officers on December 27, 2002 (Dkt. No. 13 at ¶6), the

allegation is barred, on its face, by the three-year statute of limitations applicable to actions under 42 U.S.C. section 1983.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court issue an Order *sua sponte* **DISMISSING** Plaintiff's amended complaint (Dkt. Nos. 12-13), pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A,(a)(2), 10(b), and 12(b)(6), and denying Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 14) as moot.

**BE ADVISED that any objections to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance**.[5]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

---

[5]   *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: November 14, 2008
      Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge